# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON MARIE GARRETT, | ) | 1:08cv01626 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Sharon Marie Garrett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] On November 12, 2008, the Honorable Oliver W. Wanger reassigned this action to the undersigned for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed her initial application in March 2003, alleging disability since March 1, 2003, due to cervical disc disease, carpal tunnel syndrome, migraines and depression.[3] AR 69-72, 97-103. Plaintiff's application was denied initially, on reconsideration and after a hearing by an Administrative Law Judge ("ALJ"). AR 33, 44, 11-16. In June 2005, the Appeals Council denied review. AR 4-6.

Plaintiff sought review of the decision in this Court in Case Number 1:05cv821 DLB. On January 23, 2006, the Court granted the parties' stipulation to remand the action for further administrative proceedings. AR 954-955.

While her appeal was pending, Plaintiff filed a subsequent application for benefits on April 28, 2005, alleging disability since January 29, 2005, due to fibromyalgia, high blood pressure, a thyroid issue, sclerosis, arthritis and disc disease. AR 679-691. After the Court remanded Plaintiff's prior application, the Appeals Council directed the ALJ to consolidate both cases. AR 957.

Pursuant to the Appeals Council order of remand vacating the prior decision, ALJ Patricia Flierl held a hearing on January 31, 2007. AR 1037-1072. On May 23, 2007, the ALJ issued a decision denying benefits. AR 346-355. The Appeals Council denied review on September 5, 2008. AR 338-341.

Hearing Testimony

ALJ Flierl held a hearing on January 31, 2007, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudian. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 1037.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff filed a prior application for supplemental security income on January 29, 1999. AR 396-399. On March 29, 2000, the ALJ issued a decision denying benefits. AR 25-30.

2

Plaintiff testified that she was 46 years old at the time of the hearing. Plaintiff was 5'3" and was above her normal weight because of issues with her metabolism and an underactive thyroid. She is divorced and lives with her daughter, who is 21. AR 1040.

Plaintiff has a driver's license and drives once a week. She does not drive more often because she is on pain medications and doesn't want to get in trouble for driving while taking them. AR 1041. The medications cause problems with concentration and focus, and make her sleepy and groggy. AR 1042.

Plaintiff completed the 11th grade and received her GED. She received certifications as a phlebotomist and a certified nurse assistant, though the certifications have expired. She also has training as a front medical office clerk and was also an administrative specialist in the Army. AR 1042-1043.

Plaintiff last worked in 2002 or 2003 as a part-time in-home worker. AR 1043. She stopped working because of physical problems. AR 1044. She explained that she cannot work because she has so much pain all the time that she can hardly get out of bed. She has arthritis in her lower back, hands, elbows and knees, as well as fibromyalgia. Plaintiff also has high blood pressure that isn't under control, scoliosis of the sacroiliac joints in her hips, three ruptured vertebrae in her neck, sleep apnea and a prior laceration to the palm of her left hand. AR 1046. Part of her left hand is numb and she cannot use it to pick up anything heavy (more than five pounds) or hold onto anything for more than five minutes. AR 1046-1047. She thought she could use her left hand continuously for about 15 minutes. AR 1048. She drops things all the time. AR 1050. Plaintiff also has depression and anxiety. AR 1047.

In discussing her pain, Plaintiff testified that she has the most pain in her lower back. AR 1050. The pain is constant and she rated it as an 8 out of 10, with medication. AR 1051. Plaintiff takes pain medication every four to six hours, every day. AR 1052. The medication makes her drowsy about 20 to 30 minutes after she takes it and she has to take a couple of naps, about an hour to an hour and a half each, during the day. AR 1053. Sometimes the medication helps the pain, but not always. She cannot bend over to pick something up off the ground. AR 1054. Plaintiff thought that she could sit for 45 minutes to an hour and could stand and/or walk

3

for about 15 to 20 minutes before her left leg goes numb. AR 1055. Plaintiff thought that she could lift about 10 pounds with her right hand, five pounds with her left. AR 1056.

Plaintiff's back pain radiates into her hips and knees and she also has pain in her neck and shoulders. The severity of the pain depends a lot on the weather. AR 1056. Plaintiff also has difficulty sleeping and can't sleep on her back or stomach. AR 1056-1057.

In addition to pain medication, Plaintiff has tried physical therapy twice. She has not tried injections or had a surgical consultation. AR 1057.

Plaintiff further testified that she has had problems with depression since she was a little girl, and currently is depressed about six months throughout the year. AR 1057. Her pain and lack of abilities triggers the depression. When she is depressed, she cannot take a bath, walks around in a daze, cries all the time and sleeps more. AR 1058. She often doesn't get out of bed unless she needs to go to the bathroom or get something to eat. AR 1059. She takes medication for depression "on and off, not all the time," because she sometimes feels like she doesn't need it. AR 1059. She also has anxiety attacks a few times a month. When she has one, it takes her a couple of hours to calm down. AR 1060. Although she used to take medication for the attacks, she only takes medication now if she goes to the emergency room. She testified that the medication helped, but that Dr. Castro is strict about certain medications. As long as she can get her pain medication, Plaintiff didn't want to "push anything." AR 1064.

Plaintiff also has an overactive bladder and has to wear pads all the time. AR 1061. During the night, she goes to the bathroom about seven times. During the day, she goes almost every hour and it sometimes takes her five minutes. Her doctors know about the problem but Plaintiff did not want to take more medicine. AR 1062. She also testified that she will eventually need dialysis. AR 1071.

Plaintiff thought that she could concentrate for about half an hour before needing to get up and walk around for about 20 minutes. AR 1062-1063.

Plaintiff can dress herself most of the time, but her daughter has to help her with everything because of the fibromyalgia. She can mostly bathe by herself but often cannot do her hair because she cannot reach. AR 1063.

4

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person could perform light work. She could occasionally climb ropes, ladders and scaffolds and could occasionally crawl. This person could not perform forceful pushing or pulling of arm controls on the left non-dominant side. She could only occasionally handle, finger and feel with the left upper extremity. This person is also moderately limited in her ability to understand, remember and carry out detailed instructions. The VE testified that this person could not perform Plaintiff's past work, but could perform the positions of usher, recreational attendant and transportation attendance passenger service attendant. AR 1066-1067.

For the second hypothetical, the ALJ asked the VE to assume the same person as in the first hypothetical, but one that could perform simple grasping and handling with the left non-dominant hand. This person would also be limited to simple, repetitive tasks. AR 1068. This person could not perform Plaintiff's past relevant work but could perform the positions identified in response to the first hypothetical. AR 1067-1068.

For the third hypothetical, the ALJ asked the VE to assume that this person was limited to occasional climbing, stooping and above shoulder reaching bilaterally. This person could not perform forceful gripping or grasping or repetitive fine manipulation with the left non-dominant hand. This person could not perform Plaintiff's past relevant work but could perform the positions identified in response to the first hypothetical. AR 1068.

If this person was also limited to simple, repetitive tasks, the same positions would be available. AR 1069.

For the next hypothetical, the ALJ asked the VE to assume a person that was limited to sedentary work with occasional climbing, balancing, kneeling, crouching, crawling, stooping and above shoulder reaching bilaterally. This person could not perform forceful gripping, grasping or repetitive fine manipulation with the left non-dominant hand. This person would also be limited to simple, repetitive tasks. The VE testified that this person could not perform any work. AR 1069.

For the last hypothetical, the ALJ asked the VE to assume the same person, but without the limitation to simple, repetitive tasks. This person could not perform any work. AR 1070.

Plaintiff's attorney asked the VE to assume the person in the first hypothetical, but with the additional requirement of needing to take frequent breaks to go to the restroom, about once an hour for five minutes. The VE testified that this person could not perform any work. AR 1070.

If this person had difficulty with concentration so that she could only concentrate for half an hour at a time before needing a 20 minute break, there would be no positions available. AR 1070.

If this person also needed two unscheduled rest breaks lasting for at least one hour each, there would be no positions available. AR 1071.

Medical Record

X-rays of Plaintiff's left foot taken on October 12, 2001, were normal. AR 207.

X-rays of Plaintiff's left shoulder taken on January 20, 2002, were normal. AR 203.

April 1, 2002, x-rays of Plaintiff's left palm showed no evidence of fracture or dislocation. AR 201.

On July 24, 2002, Plaintiff underwent x-rays of her lumbar spine. The test showed lumbarization of the first sacral vertebra and osteoporosis. The height of the vertrebral bodies and disc spaces was maintained. AR 194.

X-rays of Plaintiff's left hand taken on November 20, 2002, revealed juxta-articular osteoporosis, but was otherwise negative. AR 183.

A chest x-ray dated December 11, 2002, was normal and showed no acute disease. AR 181.

On June 12, 2003, Plaintiff saw Joseph C. Duflot, M.D., for a review of her kidney functioning. Laboratory tests revealed proteinuria with normal renal function over the past two years. Some elevation was likely due to increased blood pressure. Dr. Dufloz recommended conservative care. AR 126-127.

On July 18, 2003, Plaintiff saw Matthew House, D.O., for a psychiatric consultation. Plaintiff reported that she suffered from depression since the age of three. She further reported low level depression, with bouts of more severe depression, as well as fatigue and irritability.

Plaintiff was not currently receiving mental health treatment. On mental status examination, Plaintiff's speech was mildly overproductive and she had increased hand movements. Plaintiff reported that she was depressed but her affect was anxious. Plaintiff was oriented to time, person and place. Concentration and memory were intact and insight and judgment were fair. Plaintiff could provide for her basic self care, but her social functioning seemed mildly impaired by anxiety. There was no evidence that she would not be able to tolerate the mental demands of work without deterioration or decompensation. AR 156-158.

Dr. House diagnosed anxiety disorder, not otherwise specified, dysthymic disorder, and depressive disorder not otherwise specified (per claimant, not observed). He also diagnosed personality disorder, not otherwise specified. He opined that Plaintiff likely has chronic, low grade depression and anxiety. He suspected, however, that the depression and anxiety were related to Plaintiff's uncorrected thyroid disorder. Dr. House believed that Plaintiff could perform simple, repetitive tasks, understand, remember and carry out short instructions, and make simple work related decisions. She appeared capable of accepting supervision and could interact with peers, coworkers and the general public. Plaintiff could complete a normal workday, arrive on time, adapt to work and respond to changes in the work environment. Her anxiety did not appear incapacitating. AR 159.

On August 14, 2003, State Agency physician Archimedes Garcia, M.D., opined that Plaintiff was not significantly, to mildly, limited in her ability to understand, remember and carry out detailed instructions. Plaintiff could understand and remember simple and less complex instructions, sustain simple work activity, relate and adapt. AR 229-231.

On August 16, 2003, Plaintiff saw Steven Stoltz, M.D., for an internal medicine evaluation. Plaintiff reported that she was diagnosed with hyperthyroidism in 2002 and that her medication is still being adjusted. She also reported sleep apnea, high blood pressure, low back pain and a left palm laceration. AR 162-164. On examination, Plaintiff was mildly obese and in no apparent distress. Grip strength was decreased on the left. Range of motion in her neck was within normal limits. There was no tenderness to palpation in the midline or paraspinal areas of her back and straight leg raising was negative at 90 degrees. There were no muscle spasms and

muscle tone appeared to be equal throughout. Range of motion was within normal limits. Range of motion in her upper extremities was also normal. Plaintiff had a well healed surgical scar over the left palm with some associated loss of sensation to the thumb and thenar region. AR 165. Range of motion in the lower extremities was normal. She had good tone bilaterally and strength was 5/5. Sensation was grossly intact. Plaintiff also had normal pulses and reflexes. Her gait was within normal limits. AR 165-166.

Dr. Stoltz diagnosed hyperthyroidism, history of obstructive sleep apnea, hypertension, low back pain, depression, obesity, osteoporosis and left palm laceration. AR 166. He opined that while Plaintiff had numerous medical problems and an extensive past medical history, there was no objective evidence for any neurological musculoskeletal disorder that would physically restrict her. He believed she could do at least occasional activities that require fine finger dexterity, pinching and grasping with the left hand. He would also "certainly take into consideration her most recent psychiatric evaluation." AR 167.

On September 22, 2003, State Agency physician Sadda Reddy, M.D., opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand about six hours and sit for about six hours. Plaintiff could not perform forceful pushing, pulling or grasping with her left upper extremity. She could also not perform frequent fine finger manipulation with her left upper extremity. She could occasionally climb ladders, ropes and scaffolds and could occasionally crawl. Plaintiff could frequently climb stairs and ramps, balance, stoop, kneel and crouch. AR 219-226.

A November 12, 2004, x-ray of Plaintiff's lumbar spine revealed no evidence of compression fracture, spondylolisthesis or spondylolysis. There was mild sacroiliac joint arthropathy. AR 248.

Plaintiff returned to Dr. Duflot on December 23, 2004. She was doing "quite well." Her proteinuria was improved though her hypertension remained poorly controlled. Plaintiff's renal insufficiency may be due to her analgesic nephropathy or diabetic neuropathy. Dr. Duflot continued to encourage Plaintiff to quit smoking and lose weight. Plaintiff was recently diagnosed with diet-controlled diabetes, though she was placed on Glucophage. AR 268-269.

On January 6, 2005, Irma Yolanda Castro, M.D., wrote a letter in support of Plaintiff, who had been treating with Family Care Providers since 1997. She explained that Plaintiff has multiple medical problems for which she needs continuous medical care. Dr. Castro listed Plaintiff's medical problems as "diabetes mellitus, hypertension, hyperlipidemia, hypothyroidism, fibromyalgia and chronic pain syndrome." Plaintiff suffers constantly from low back pain from degenerative disc disease and arthritis, and cannot care for herself completely. Plaintiff is on numerous medications, including pain medication and muscle relaxants, that help her chronic symptoms. In addition to her physical problems, Plaintiff suffers from significant depression that has made it difficult for her to get out of bed. Dr. Castro concluded, "It is my professional opinion that Ms. Garrett is permanently disabled and that she is unable to obtain any gainful employment in her current condition." AR 247.

Plaintiff saw Shireen R. Damania, M.D., for a consultive psychiatric examination on July 11, 2005. Plaintiff was not seeing a therapist or psychiatrist but was receiving medication from her treating source, Dr. Castro. Plaintiff reported a history of depression and stress. On mental status examination, her mood was mildly depressed and she became slightly tearful during the interview. Her affect was broad and appropriate. Impulse control and frustration tolerance were within normal limits and there was no evidence of a thought disorder. Her memory for recent and past recall was intact and her attention span was within normal limits. Plaintiff was of average intelligence and could do simple mathematics. AR 845-848.

Dr. Damania diagnosed depressive disorder, not otherwise specified. She opined that Plaintiff could understand, remember and carry out three and four step job instructions. She could respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision. AR 848.

Also on July 11, 2005, Plaintiff saw Rustom F. Damania, M.D., for a consultive physical examination. She complained of low back pain for two years and sclerosis of the sacroiliac joints. Plaintiff also reported that she has had fibromyalgia for the past two years and has headaches since she was 14 years old. Plaintiff also suffers from urinary incontinence, which she thought may be from drinking a lot of water and being nervous. On examination, the joints of her upper

and lower extremities were normal. Pinch test and grip strength in her left hand was 5/5 and there was no definite sensory impairment. Her cervical and lumbar spines were within normal limits with no radiculopathy. Plaintiff's gait was normal. As for trigger points, the only location where there was tenderness was just below the cervical spine and the supraspinatus area on both sides. AR 851-854.

Dr. Damania diagnosed moderate obesity, diabetes mellitus type II, hypertension, controlled, chronic low back pain with no evidence of radiculopathy, headaches, probably chronic tension headaches, and sleep disturbances. Other than being moderately obese, there was no other major objective evidence for gross physical impairment. Plaintiff should be able to occasionally lift 50 pounds, 25 frequently, stand or walk for six hours and sit without restriction. Plaintiff had no other limitations. AR 854-855.

On August 16, 2005, State Agency physician Dr. Garcia opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. Plaintiff could sustain simple, repetitive tasks with adequate pace and persistence, and could adapt and relate to coworkers and supervisors. AR 863-865.

On August 16, 2005, Dr. Reddy noted that she spoke with Dr. Castro about her January 2005 letter. Dr. Castro explained that Plaintiff has many psychological issues that play a significant role in her problems. From a physical standpoint, Dr. Castro believed that Plaintiff had fibromyalgia tender points. She opined that Plaintiff could perform a desk job or sedentary job with no frequent overhead reaching or frequent stooping. Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently. She could be on her feet for two to four hours and could sit without limitation. AR 746.

Dr. Reddy sent Dr. Castro a Report of Contact setting forth the details of their discussion and asked her to sign and return it. AR 747. There is no indication that this was returned.

Also on August 16, 2005, Dr. Reddy opined that Plaintiff could occasionally lift 10 pounds, less than 10 pounds frequently, stand and/or walk for two to four hours and sit for six hours. She could frequently climb ramps and stairs, balance, kneel and crawl, and could occasionally climb ladders, ropes and scaffolds, stoop and crouch. She could not perform

10

frequent overhead reaching. Dr. Reddy gave greater weight to Dr. Castro's opinion than she did to Dr. Damania's opinion, noting that Dr. Castro has treated Plaintiff since 1997 and is familiar with Plaintiff's longitudinal record of pain. She therefore assigned Plaintiff a sedentary RFC. AR 867-873. This opinion was affirmed on November 23, 2005, by State Agency physician James V. Glaser, M.D. AR 874.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of cervical disc disease with C6-7 disc herniation, history of proteinuria and renal insufficiency of unknown etiology, non-insulin-dependant diabetes, sacroiliac joint arthropathy, arthritis, osteoporosis, and history of left palm laceration. AR 349. Despite this, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours, and sit for six hours. Plaintiff could occasionally climb, balance, kneel, crouch, crawl, stoop and reach above shoulder height bilaterally. Plaintiff could not use her left non-dominant hand to perform forceful gripping/grasping or repetitive fine manipulation. AR 350.

The ALJ explained that the final decision on Plaintiff's prior application found an RFC for light work. A finding that Plaintiff was capable of more than light work was not justified. AR 351.

Plaintiff could not perform her past relevant work. However, based on the testimony of the VE, the ALJ determined that Plaintiff could perform a significant number of positions in the national economy. AR 354.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (cervical disc disease with C6-7 disc herniation, history of proteinuria and renal insufficiency of unknown etiology, non-insulin-dependant diabetes, sacroiliac joint arthropathy, arthritis, osteoporosis, and history of left palm laceration) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4)

cannot perform her past relevant work, but (5) retains the RFC to perform a significant number of jobs. AR 350-355.

In her opening brief, Plaintiff argues that the ALJ (1) improperly evaluated Dr. Castro's opinion set forth in her January 6, 2005, letter; and (2) improperly evaluated the opinions of the State Agency physicians. In her reply, Plaintiff raised a new argument related to whether the ALJ properly applied res judicata in adopting the prior RFC for light work. Defendant was granted leave to file a sur-reply and this issue is therefore properly before the Court.

## DISCUSSION

A. Application of Res Judicata

Plaintiff argues that the ALJ found greater limitations than those found in the previous decision. According to Plaintiff, these greater limitations constitute changed circumstances to preclude the application of res judicata. Plaintiff therefore argues that the ALJ erred by adopting the prior finding that Plaintiff could perform light work.

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.3d 691, 693 (9th Cir. 1988); Acquiescence Ruling ("AR") 97-4(9). For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing nondisability. *Chavez*, 844 F.3d at 693. Changed circumstances also include an increase in the severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the criteria for determining disability. AR 97-4(9).

However, even where the claimant is able to overcome the presumption of disability, certain of the prior findings are entitled to some res judicata consideration. Prior determinations of RFC, education and work experience are entitled to res judicata absent new and material evidence on the issue. *Chavez,* 844 F.2d at 694. "Adjudicators must adopt such a finding from

the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97-4(9).

Plaintiff's argument misunderstands the application of the *Chavez* rationale. Plaintiff contends that the existence of greater limitations and additional and/or worsening impairments constitute changed circumstances that prohibited the ALJ from relying on res judicata in adopting the prior RFC. The existence of changed circumstances, however, only overcomes the presumption of continuing non-disability. It does not, as Plaintiff contends, preclude the application of res judicata to other findings. As explained above, even though the presumption has been overcome, the RFC finding is still subject to res judicata absent new and material evidence that warrants a change.

Here, then, the existence of new impairments or greater limitations constituted changed circumstances to overcome the presumption of continuing non-disability. The ALJ determined, however, that the new evidence did not warrant a change from the prior RFC finding. AR 351. Whether that finding is supported by substantial evidence is discussed in the next sections.

Insofar as Plaintiff suggests that the ALJ's finding of non-exertional left hand limitations requires a change in the RFC, she is incorrect. Again, the prior RFC finding is entitled to res judicata absent new and material evidence *that warrants a change*. The ALJ's addition of a non-exertional impairment did not automatically take Plaintiff's RFC out of the realm of light work.

Plaintiff's suggestion that the Appeals Council's remand order "implicitly acknowledged" that she had greater limitations based on the ALJ's finding she had new manipulative and mental limitations, also fails. Reply, at 3. Plaintiff believes that because the remand order did not "even remotely suggest that the ALJ should consider res judicata," the ALJ improperly applied res judicata and should have reviewed the evidence de novo. The remand order states, however, that the ALJ should "give *further* consideration" to Plaintiff's RFC and provide rationale with specific references to the record in support of the assessed limitations. AR 957. It did not order de novo

review, nor would de novo review prevent the application of res judicata. As Defendant points out, these are two separate legal concepts that can be applied simultaneously.

B.  Treating Physician's Opinion

Plaintiff argues that the ALJ improperly rejected Dr. Castro's January 6, 2005, letter in which she opined that Plaintiff was "permanently disabled and. . .unable to obtain any gainful employment in her current condition." AR 247.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray,* 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" *Orn,* 495 F.3d at 632; *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews,* 53 F.3d at 1041.

15

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

Plaintiff concedes that a physician's statement that a claimant is disabled is not entitled to controlling weight, though she argues that the opinion should still play an important role in the disability analysis. Indeed, a statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. § 416.927(e).

In her decision, the ALJ set forth Dr. Castro's opinion set forth in her January 6, 2005, letter. AR 351. ALJ Flierl explained that despite Dr. Castro's opinion as to Plaintiff's disability, she failed to set forth any specific limitations or restrictions. AR 351. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding ALJ properly rejected physician opinion which lacked "specific findings that were useful in the disability determination.) However, in recognizing the importance of a treating physician's opinion, Dr. Reddy attempted to clarify her opinion and obtain specific limitations. AR 746. Dr. Reddy spoke with Dr. Castro in August 2005 and set forth her opinions in a Report of Contact. AR 746. Rather than describing Plaintiff as totally disabled, Dr. Castro cited Plaintiff's fibromyalgia and stated that Plaintiff could perform a desk

job or sedentary job with no frequent overhead reaching or frequent stooping. Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently. She could be on her feet for two to four hours and could sit without limitation. AR 746. A copy of the Report of Contact was sent to Dr. Castro for signature, though there is no evidence that it was returned. AR 351.

In reviewing Dr. Castro's August 2005 limitations, the ALJ first noted that Dr. Castro's treatment records did not include any documentation consistent with fibromyalgia or any other significant impairment. AR 351. Indeed, while there are a few notations of chronic pain syndrome in Dr. Castro's notes, there is no evidence that she ever examined Plaintiff for fibromyalgia or diagnosed fibromyalgia. It is legitimate to reject a treating physician's opinion which lacks supporting clinical findings. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ next explained that when Dr. Damania examined Plaintiff in July 2005, one month before Dr. Castro's opinion, the only tender trigger points were just below the cervical spine and the supraspinatus area on both sides. AR 851-854. Dr. Damania did not diagnose fibromyalgia and concluded that other than being moderately obese, there was no other major objective evidence for gross physical impairment. AR 854-855. When an examining physician provides independent clinical findings that differ from the findings of the treating physicians, such findings constitute substantial evidence. *Orn*, 495 F.3d at 632; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source).

The ALJ also found that Dr. Stoltz's August 2003 examination findings were consistent with those of Dr. Damania. Although Dr. Stoltz noted reduced grip strength and some loss of sensation in the left hand, a finding that was incorporated in the RFC, he found no objective evidence for any neurological musculoskeletal disorder that would restrict her physically. AR 167.

The ALJ therefore set forth specific and legitimate reasons for rejecting Dr. Castro's limitations. Plaintiff asserts that the ALJ should have continued her analysis pursuant to *Orn*, which directs the ALJ to examine certain factors in deciding how much deference should be given

to a treating opinion that is not entitled to controlling weight. *Orn*, 495 F.3d at 633. This instruction assumes that the opinion is supported in the first instance, which it is not here. In the Report of Contact, Dr. Castro cites Plaintiff's fibromyalgia prior to setting forth her opinion as to Plaintiff's limitations. The fact that Dr. Castro's treatment record did not support such a diagnosis, combined with the contradictory findings of two consultive physicians, renders the ALJ's decision to give Dr. Castro's opinion "little weight" supported by substantial evidence and free of legal error.

C. Dr. Reddy's Opinion

Plaintiff contends that the ALJ erred by ignored the opinion of Dr. Reddy. She states, however, that "while it is easy to see that the ALJ rejected Dr. Reddy's opinion, the ALJ did not give any explanation for this conduct, which violates the Commissioner's own provisions in SSR 96-6p." Opening Brief, at 16. Since Dr. Reddy's opinion was based specifically on Dr. Castro's limitations, it is clear that the ALJ rejected Dr. Reddy's opinion for the same reasons noted above. *See eg.*, *Magallanes,* 881 F.2d at 755 (The ALJ need not recite the incantation "I reject the treating physician's opinions because ..." so long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt the treating physician's opinion).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Sharon Marie Garrett.

IT IS SO ORDERED.

Dated:   February 9, 2010                    /s/ Dennis L. Beck
                                         UNITED STATES MAGISTRATE JUDGE